1  WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jamel Walker, | No. cv-07-1566-PHX-ROS |
| Plaintiff, | **ORDER** |
| vs. | |
| United States Postal Service; John E. Potter, Postmaster General, | |
| Defendants. | |

Before the Court is Defendant United States Postal Service's Motion for Summary Judgment (Doc. 46) and Defendant Postal Service's Motion for Summary Disposition (Doc. 48).

The latter Motion is premised on the fact that Plaintiff failed to respond to Defendant's Motion for Summary Judgment as required by LRCiv 56.1. LRCiv. 7.2(i) states that a party who fails to file a required responsive memorandum, unless given leave to do otherwise by the Court, may be deemed to have "consent[ed] to the denial or granting of the motion and the Court may dispose of the motion summarily." However, the Ninth Circuit has explicitly forbidden district courts from summarily granting motions for summary judgment, regardless of the existence of such rules. Martinez v. Stanford, 323 F.3d 1178, 1182 (9th Cir. 2003). "[A] nonmoving party's failure to comply with local rules does not excuse the moving party's affirmative duty under Rule 56 to demonstrate its entitlement to

judgment as a matter of law. Fed. R. Civ. P. 56." Id. Accordingly, Defendant's Motion will be considered on the merits. For the reasons stated herein, it will be granted and the suit dismissed.[1]

BACKGROUND

Plaintiff Jamel Walker was hired by the United States Postal Service as a part-time flexible distribution clerk on February 28, 1998. At the time she was in the third trimester of pregnancy. She resigned four days after she began working and contacted an Equal Employment Opportunity (EEO) counselor, alleging that she was discriminated against and forced to resign by her supervisors because she ws a pregnant, African-American female. Plaintiff and the Postal Service entered into a settlement agreement, and she withdrew her complaint and was re-hired.

Before she completed her ninety-day probationary period, she was terminated, allegedly for absteneeism. She filed a complaint with an EEO counselor alleging that she was actually terminated due to her race. Plaintiff again entered into a settlement agreement with the Postal Service, which agreed to re-hire Plaintiff as a part-time flexible distribution clerk at the General Mail Facility in Phoenix, Arizona, contingent upon successful completion of pre-employment requirements, which included a medical exam.

The medical examiner found Plaintiff, as a result of a car injury in November 1999, could not physically perform the job requirements, which included an ability to lift 70 pounds, carry up to 44 pounds, and to grasp and sort mail. George Kintscher, Supervisor of the Postal Service's Phoenix Employment Office, informed Plaintiff in writing that she was not physically able to perform the job. He invited her to submit alternative information about

---

[1] Plaintiff's suit is against both the United States Postal service and Postmaster General John E. Potter in his official capacity. Only Defendant Postal Service has technically moved for summary judgment. However, because the claims against both Defendants are identical, as is the basis behind them, it is appropriate to grant summary judgment against both Defendants. See, e.g., Corales v. Bennett, 567 F.3d 554 (9th Cir. 2009).

her physical abilities or to request accommodations. Plaintiff requested an extension of time to do so, but never submitted any additional information.

Plaintiff filed an EEO complaint arising out of these events, alleging she was found medically unsuitable for the distribution clerk position because racial and sexual discrimination, and discrimination based on her perceived disability, and in retaliation for her prior EEO activity. She is now before this Court on those claims.

## STANDARD OF REVIEW

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Substantive law determines which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In addition, the dispute must be genuine; that is, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323 (internal quotations and citations omitted). The party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party; "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted). However, "[c]redibility determinations, the weighing of the evidence, and the

drawing of legitimate inferences from the facts are jury functions, not those of a judge." Id. at 255. Therefore, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor" at the summary judgment stage. Id.

## ANALYSIS

### A. Settlement Agreements

Defendant argues that Plaintiff is precluded from raising any issues that were resolved by settlement agreements. Settlement agreements reached at any stage of the EEO complaint process are binding on both parties. 29 C.F.R. § 1614.504(a). Accordingly, Defendant states, portions of Plaintiff's Complaint which address issues covered in her earlier settlement agreements are barred. This includes her claims that she was wrongfully terminated in March and November of 1998 and that the Postal Service discriminated against her by "forcing her to be rehired" and "not reinstating her original seniority date after Plaintiff settled claims for her wrongful terminations . . . ."

Defendant is correct. "A plaintiff who knowingly and voluntarily agrees to settle [her] claims is bound by [her] agreement." Folley v. Henderson, 175 F. Supp. 2d 1007, 1011 (S.D. Ohio 2001) (quoting Wyche v. Proctor & Gamble Co., 772 F. Supp. 982, 984 (S.D. Ohio 1990)). Plaintiff has not come forth with any evidence stating that she did not settle freely or voluntarily, or that the settlement agreement is otherwise void. Therefore, only claims arising from Defendant's refusal to re-hire Plaintiff when she was found medically unsuitable for the distribution clerk position in 2001 are valid.

### B. Prima Facie Case of Discrimination Under Title VII

Defendant argues that Plaintiff has not established a prima facie case of discrimination. In a Title VII trial, the plaintiff "must carry the initial burden under the statute of establishing a prima facie case of racial discrimination." McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). This can be done by showing:

>   (1) she belongs to a protected class,
>   (2) she was performing according to her employer's legitimate expectations,
>   (3) she suffered an adverse employment action, and
>   (4) other employees with qualifications similar to her own were treated more favorably.

1 | Bergene v. Salt River Project Agric. Improvement & Power Dist., 272 F.3d 1136, 1140 (9th
2 | Cir. 2001) (citing Goodwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1220 (9th Cir. 1998)).

Here, the Postal Service ostensibly terminated Plaintiff on the ground that she was medically incapable of meeting the position's requirements. It based this on a medical evaluation of Plaintiff, which it has provided. Def. Ex. G, Item. 6, Item. 9. The Medical Officer found Plaintiff's physical limitations on lifting and grasping were "not compatible with the strenuous and arduous activities required" for the position in question and that "postal employment would place [her] personal health and safety in jeopardy." Id. Plaintiff was then asked to provide "responsive medical information, or to request accommodation." Id. She requested additional time to do so, which was granted, but ultimately never provided the information in question.

Plaintiff has not made any demonstration that employees with similar qualifications were treated more favorably. She was terminated in accordance with seemingly neutral policy after failing to request reasonable accommodation, creating no genuine issue of material fact for trial. Accordingly, Plaintiff has not made out a prima facie case of discrimination under Title VII.

### C. Americans with Disabilities Act and Rehabilitation Act

Defendant argues that the Americans with Disabilities Act ("ADA") does not apply to the United States Postal Service, part of the United States government. Defendant is correct. See 42 U.S.C. § 12111(5) ("The term 'employer' does not include the United States [or] a corporation wholly owned by the government of the United States."). As Defendant points out, Plaintiff was on notice that her complaint must be amended to be bring her claims under the Rehabilitation Act. 29 U.S.C. § 791(b); Joint Proposed Case Management Plan (Doc. 27). She did not do so.

However, given the liberality with which this Court is to construe *pro se* filings, it is appropriate to consider whether Plaintiff has demonstrated that a genuine issue of material fact exists as to a Rehabilitation Act claim. In order to prevail on such a claim, Plaintiff must demonstrate that she "suffers a physical or mental impairment that substantially limits [her]

ability to perform major life activities." Linder v. Potter, 304 Fed. Appx. 570, 571 (9th Cir. 2008) (citing Gribben v. United Parcel Serv., Inc., 528 F.3d 1166, 1169 (9th Cir. 2008). Here, the only disability that is alleged is those limitations on lifting and grasping found by Defendants' medical examiner.

However, "major life activities"

refers to those activities that are of central importance to daily life. In order for performing manual tasks to fit into this category – a category that includes such basic abilities as walking, seeing, and hearing – the manual tasks in question must be central to daily life.

Toyoto Motor Mfg., Ky. v. Williams, 534 U.S. 184, 200 (2002). "When the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires . . . that plaintiffs allege that they are unable to work in a broad class of jobs." Sutton v. United Air Lines, Inc., 527 U.S. 471, 479 (1999). Focus on the plaintiff's inability to perform manual tasks associated only with her job is inappropriate. Toyota Motor Mfg., 534 U.S. at 200. "Repetitive work with hands and arms extended at or above shoulder levels for extended periods of time . . . is not an important part of most people's daily lives." Id. Accordingly, that court "should not have considered [the party's] inability to do such manual work in her specialized assembly line job as sufficient proof that she was substantially limited in performing manual tasks." Id.

This case is little different. The specific limitations found by Plaintiff's doctor are:

Limit repetitive grasping with left and right hands to 4 or 5 hours per day. Lifting from floor to knuckle of 30 lbs. on an occasional basis, 15 lbs. on a frequent basis, and 6 lbs. on a constant basis. Lifting from knuckle to shoulder of 30 lbs. occasionally, 15 lbs. on a frequent basis, and 6 lbs. on a constant basis. Overhead lifting to 30 lbs. occasionally, 15 lbs. frequently, and 6 lbs. constantly. Ability to carry 30 lbs. for 100 feet, and ability to push 60 lbs. and pull 70 lbs.

Def. Ex. G, Item 9.

Plaintiff has not provided any evidence that goes towards showing that these are the sort of broad-based limitations that could constitute disability, as defined above. Common sense concurs; it is a minority of jobs that require repetitive grasping and the constant lifting of heavy items.

Accordingly, Plaintiff has not demonstrated that there is a genuine issue of material fact as to whether she has or was viewed by Defendants as having a disability under the Rehabilitation Act. Accordingly, summary judgment is appropriate on this claim.

### D. Prima Facie Case of Retaliation Under Title VII

Defendant argues Plaintiff cannot make out a prima facie case of retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, *et seq*. To establish a prima facie case, a plaintiff must offer proof of:

> (1) a protected activity;
> (2) an adverse employment action; and
> (3) a causal link between the protected activity and the adverse employment action.

Cornwall v. Electra Cent. Credit Union, 439 F.3d 1018, 1034-35 (9th Cir. 2006) (citing Steiner v. Showboat Operating Co., 25 F.3d 1459, 1464 (9th Cir. 1994). "If the plaintiff succeeds in making a prima facie case, the burden shifts to the employer to articulate a legitimate justification for the adverse employment decision." Tempesta v. Motorola, Inc., 92 F. Supp. 2d 973, 982 (D. Ariz. 1999). Plaintiff must then "establish that the action was really motivated by retaliatory animus." Id.

Defendant has articulated a legitimate justification for the adverse employment position. Indeed, on the face of the matter, the determination of her fitness appears to have been made by a neutral arbiter rather than by the supervisors who might, presumably, have reason to retaliate. Given this showing, Plaintiff failed to present any evidence that the decision was actually motivated by retaliatory animus. Accordingly, Defendant is entitled to summary judgment.

### F. Claim for Relief Under 29 C.F.R. § 1614.109(f)(3)

29 C.F.R. § 1614.109(f)(3) states that when an agency or its employees fail, without good cause, to respond fully and in timely fashion to an order of an administrative judge, that judge may take such actions such as drawing an inference that the requested information would reflect disfavorably on the party who failed to provide it, or excluding the evidence altogether. Plaintiff argues that Defendants were ordered to produce certain materials by the

administrative judge but did not comply until over a month after the deadline had passed and therefore requests damages.

Defendant argues that this regulation is not applicable to district court actions. They are correct; by its plain language, the provision allows for sanctions to be imposed *by an administrative judge* only. Further, nothing in the provision provides for the relief Plaintiff requests, which is broad damages for hardship and emotional distress. Finally, as Defendant points out, the error seems to be essentially harmless; Plaintiff received the documents in question more than a year before she filed her complaint in this Court. the purpose for which they were apparently necessary.

Finally, Plaintiff states in passing in her Complaint that she is pleading a claim under 42 U.S.C. § 1985. However, she fails to spell out any grounds for relief on this cause of action or explain why her rights were violated in a manner prohibited by the statute. Accordingly, Defendant has demonstrated its entitlement to summary judgment against both it and John E. Potter. As such,

**IT IS ORDERED** Defendant's Motion for Summary Judgment (Doc. 46) is **GRANTED**.

**FURTHER ORDERED** this action is **DISMISSED WITH PREJUDICE** as to each Defendant.

DATED this 16th day of July, 2009.

Roslyn O. Silver
United States District Judge